UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SHINAYE WILLIAMS | CIVIL ACTION |
| VERSUS | NO. 15-168-RLB |
| UNITED STATES ENVIRONMENTAL SERVICES, LLC, USES, INC. AND UNITED STATES MARITIME SERVICES, INC. | |

### ORDER

Before the Court is Plaintiff's Motion to Compel (Motion) responses to Interrogatory No. 5 and Request for Production Nos. 6, 10, 23, 25 and 27, filed on November 8, 2015. (R. Doc. 20). Defendant filed a Memorandum in Opposition (Opposition) on November 25, 2015. (R. Doc. 26). On December 2, 2015, Plaintiff filed a Reply Memorandum in support of her Motion. (R. Doc. 33). For the reasons discussed below, Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.

### I.   BACKGROUND

In this action, Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, by subjecting her to: discriminatory compensation; sexually harassing conduct by her supervisor; and retaliation by firing her shortly after reporting her supervisor's conduct.[1] (R. Doc. 18 at 1). According to the Complaint, Plaintiff started working

---

[1] Plaintiff claims the same conduct also violated the Louisiana Employment Discrimination Law. Plaintiff also sues Defendants under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201; the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001; and the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Pub. L. No. 99-272, § 9503, 100 Stat. 82 (1986).

for Defendants on June 27, 2014 as a health and safety supervisor. (R. Doc. 18 at 3). In July of 2014, Defendants "secured a contract to work at the ExxonMobil Baton Rouge refinery" (ExxonMobil) and assigned Plaintiff to work at the site. (R. Doc. 5 at 2). "Throughout her employment," Plaintiff alleges, she "was subject to unwanted touchings [sic], inappropriate comments, and sexual advances from her supervisor, Mr. Robert 'Boogie' Sanders." (R. Doc. 18 at 3). Plaintiff then "reported Mr. Sanders' conduct to Defendants' Human Resources Department." (R. Doc. 18 at 3). Shortly after reporting the conduct, Plaintiff claims that "Defendants abruptly terminated [her] employment." (R. Doc. 18 at 3). On March 20, 2015, Plaintiff filed the instant lawsuit.

During discovery, Plaintiff served Interrogatories and Requests for Production on Defendant. Defendant provided responses and objections to Plaintiff's discovery requests and eventually submitted an Amended Privilege Log. (R. Doc. 20-2); (R. Doc. 20-8). At issue in this Motion are Defendant's Responses to Interrogatory No. 5 and Request for Production Nos. 6, 23, 25 and 27.

## II. APPLICABLE LAW

### A. Scope of Discovery

Rule 26(b)(1) of the Federal Rules of Civil Procedure[2] allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

---

[2] Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015 to clarify the scope of discovery. The 2015 amendments "restor[e] the proportionality calculation to Rule 26(b)(1)," but do not "change the existing responsibilities of the court and the parties to consider proportionality." Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015). The amendments likewise do not "place on the party seeking discovery the burden of addressing all proportionality considerations." *Id*. "The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending." *American Federation of Musicians of the U.S. and Canada v. Skodam Films, LLC*, -- F. Supp. 3d --, 2015 WL 7771078, at *5 (N.D. Tex. Dec. 3, 2015) (applying the amended version of Rule 26(b)(1) to a motion to compel filed before December 1, 2015). Given the restorative nature of the 2015 amendments, the Court finds that applying the amendments to the instant Motion to Compel is both just and practicable.

proportional to the needs of the case." Whether discovery is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information may fall within this scope of discovery even if it is not admissible in evidence. Fed. R. Civ. P. 26(b)(1).

### III.    DISCUSSION

#### A.    Integrated Enterprise

In her Complaint, Plaintiff alleges that "Defendants [United States Environmental Services and United States Maritime Service] constitute an integrated enterprise with common management, common ownership or financial control, centralized control of labor relations, and a functional interrelation of operations." (Amended Compl., R. Doc. 18 at 4). Plaintiff further claims that Defendants "operate as a single unit," having the same or similar officers, managers and supervisors; having common ownership; and sharing a centralized source of authority for the development of personnel policies and employment decisions. (R. Doc. 18 at 4). Plaintiff therefore sought documents "sufficient to explain Defendant's corporate or associational structure, including documents sufficient to explain the relationship or affiliation between Defendant, United States Environmental Services, LLC and United States Maritime Service." (Req. for Produc. No. 6, R. Doc. 20-2 at 17). Defendant objected to the discovery request as "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." (Def.'s Resp. to Req. for Produc. No. 6, R. Doc. 20-2 at 17). But contrary to Defendant's objections, whether the named Defendants constitute an integrated enterprise is relevant to Plaintiff's amount of recoverable damages.

The combined amount of compensatory and punitive damages available to each claimant under Title VII is capped according to the size of the employer's workforce. 42 U.S.C. § 1981a(b)(3)(A)-(D) (compensatory and punitive damages shall not exceed $50,000 for an employer with 15 to 100 employees; $100,000 for 101 to 200 employees; $200,000 for 201 to 500 employees; and $300,000 for more than 500 employees).  The term "employer," as used in Title VII is construed liberally.  *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983). The 'single-employer' or 'integrated enterprise' test asks whether two separate entities should in fact be treated as one integrated enterprise for, among other things, determining the size of the employer under Title VII. *Bristol v. Bd. of County Commissioners*, 312 F.3d 1213, 1218 (10th Cir. 2002).  This test considers four factors: (1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control.

The single-employer or integrated enterprise test is intensively factual in nature, making it important to have a fully developed record on the issue.  Therefore, Plaintiff's Motion to Compel is **GRANTED** as to Request for Production No. 6.  Defendant must **respond** to Request for Production No. 6 within **14 days** of this Order.

### B. Privileged Documents

Plaintiff argues that Defendant has wrongfully withheld communications between Defendant and Exxon Mobil based on unfounded claims of privilege — specifically, the work product doctrine and the settlement privilege.

**Request for Production No. 25:**
Documents evidencing communications to/from Exxon Mobil regarding Plaintiff.

**Response to Request for Production No. 25:**
Defendant objects to Request for Production No. 25 to the extent that it calls for information protected by the work product doctrine. However, Defendant is willing to produce some emails

protected by the work product doctrine provided that Plaintiff does not construe the production as a blanket waiver of the work product doctrine. Please see attached privilege log.

(R. Doc. 20-2 at 22); (R. Doc. 20-8). Although Defendant's discovery response did not mention the settlement privilege, its Privilege Log contained 13 entries describing emails being redacted or withheld under the settlement privilege, work product doctrine or both. (R. Doc. 20-8). The Court later Ordered Defendant to file unredacted versions of the emails under seal, which the Court has reviewed in considering the Motion. (R. Doc. 38).

Defendant's privilege log contains 13 entries each describing emails either being redacted or withheld. The first entry describes an email sent by Mike Shay to Candice Fobb on October 19, 2014 from which "irrelevant and confidential" information "relating to drug testing and other employees" has been redacted. (R. Doc. 20-8 at 1); (Defendant460, R. Doc. 20-3 at 1). Having reviewed the material redacted from the email, the Court finds the redacted material irrelevant and outside the scope of discovery as it concerns matters unrelated to this litigation.

The 12 remaining entries describe emails that were either redacted or withheld altogether based on the work product doctrine, settlement privilege, or both. (R. Doc. 20-8).

Federal Rule of Evidence 408 makes "conduct or a statement made during compromise negotiations about the claim" inadmissible to "prove or disprove the validity or amount of a disputed claim." Based on this rule, some courts have found the existence of a settlement privilege at federal common law limiting the scope of discovery. *See Software Tree, LLC v. Red Hat, Inc.*, 2010 WL 2788202, at *2-5 (E.D. Tex. June 24, 2010).

Defendant contends that the emails between its employees and Exxon Mobil described in entries 2 through 10 are protected from disclosure by this settlement privilege. (R. Doc. 20-8 at 1-2). The privilege applies, according to Defendant, because the emails concern a severance package it planned to offer Plaintiff at the time of her termination in exchange for her general

release of any potential claims against Defendant. Given the timing and nature of the communications, however, Defendant's reliance on the settlement privilege is misplaced.

The protections of the settlement privilege "were designed to encourage the compromise and settlement of existing disputes." *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987). Meaning the rule is understood as protecting non-judicial compromise negotiations between the parties in the context of existing litigation. *Id.*; *see also Software Tree, LLC*, 2010 WL 2788202, at *4 ("The Court permits discovery of negotiations pertaining to agreements . . . entered into outside the context of litigation, but not of negotiations pertaining to agreements that settle law suits.").

"Where, as here, the employer tries to condition severance pay upon the release of potential claims" at the time of termination, "the policy behind Rule 408 does not come into play." *Cassino*, 817 F.2d at 1343. Indeed, the severance was geared toward *potential* claims that may be brought after the termination. By definition, a *potential* dispute is one that does not currently exist. *See Seasonwein v. First Montauk Securities Corp.*, 324 F. App'x 160, 162 (3d Cir. 2009) (release offered to employee in exchange for severance pay at time of termination was not protected by settlement privilege as it "merely affected a general release—it did not settle any specific claims, as there were no claims at issue that could have been settled"); *Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1372-73 (10th Cir. 1977) (The parties' discussions prior to the filing of suit were "business communications" and not "offers to compromise" as the "discussions had not crystallized to the point of threatened litigation, a clear cut-off point . . . ."); *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992) (The court found the case was distinguishable from those in which an offer of severance conditioned on waiver of a discrimination claim is made at the time of discharge and is not considered an offer

of compromise. "However, where a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408."). Therefore, the redacted documents described in entries 2 through 10 are not protected from disclosure by the settlement privilege.

Defendant next argues that the redacted documents underlying entries 2 through 10, as well as the documents described in entries 11 through 13 of its privilege log, constitute attorney work product.

Work product protection extends to documents and tangible things that are prepared in anticipation of litigation by a party or its representative, Fed. R. Civ. P. 26(b)(3)(A), but does not extend to the underlying relevant facts, *Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000), or to documents assembled in the ordinary course of business, *U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). The burden of establishing applicability of the work product doctrine falls on the party withholding discovery. *St. James Stevedoring Co., Inc. v. Femco Machine Co*., 173 F.R.D. 431, 432 (E.D. La. 1997).

To begin, the Court finds Defendant has not met its burden of establishing the applicability of the work product doctrine. In its discovery response and privilege log, Defendant summarily claims that 12 out of 13 documents listed on its privilege log are withheld as "work product." (R. Doc. 20-8 at 1-2). But other than this declaration, Defendant fails to make any argument supporting the applicability of the work product doctrine, nor does Defendant even mention the work product doctrine in its Opposition to Plaintiff's Motion to Compel. (R. Doc. 26 at 7-8). Therefore, the Court finds Defendant has not met its burden of establishing that the withheld or redacted documents in entries 2 through 13 constitute work

product. Nonetheless, even if Defendant had attempted to support its claimed privilege, the Court would nonetheless reach the same finding based on its in-camera review of the documents.

As an initial matter, the documents described in entries 2 through 10, which Defendant additionally claimed were protected by the settlement privilege, are not protected by the work product doctrine. The redacted email communications taking place between Defendant's employees and employees of Exxon Mobil concern Ms. Fobb's internal investigation of Plaintiff's discrimination complaints and, as previously discussed, Defendant's intent to offer Plaintiff a severance package at the time of her termination.

First, the redacted documents do not constitute work product as they are part of a human resources investigation and were created in the ordinary course of business. In its Interrogatory Responses, Defendant explained that Ms. Fobb "is primarily responsible for conducting all investigations regarding complaints of employment discrimination, harassment, or retaliation." (R. Doc. 20-2 at 8). Ms. Fobb's internal investigation and the documents created in connection with it were a result of Defendant's routine business practice of investigating internal complaints of discrimination and would have occurred regardless of any threat of litigation. *Koumoulis v. Independent Financial Marketing Group, Inc.*, 29 F. Supp. 3d 142, 146 (E.D.N.Y. 2014) ("Human resources work, like other business activities with a regulatory flavor, is part of the day-to-day operation of a business; it is not a privileged legal activity."). Therefore, the redacted communications described in entries 2 through 10 are not protected by the work product doctrine.

Beyond that, even if the Court were to find the work product doctrine applied, the communications would still be discoverable as Defendant has put them at issue in this litigation and effectively waived any applicable privilege.

Defendant has relied on Ms. Fobb's internal investigation to defend against both Plaintiff's claims of sexual harassment and of retaliation. In response to Plaintiff's sexual harassment claim, Defendant has raised the *Faragher/Ellerth* affirmative defense articulated by the Supreme Court. (R. Doc. 44 at 2). The defense requires an employer to show that: (1) it exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and (2) the employee failed to take advantage of any preventive and corrective opportunities made available. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Defendant has cited to the investigation conducted by Ms. Fobb to show that it exercised reasonable care to promptly correct any harassing behavior. (Def.'s Resp. to Interrog. No. 6, R. Doc. 20-2 at 7-8). Defendant has also alleged that it "prevented retaliation" against Plaintiff "by having Candice Fobb . . . conduct a thorough investigation of Plaintiff's allegations . . . ." (Def.'s Resp. to Interrog. No. 9, R. Doc. 20-2 at 8-9).

By relying on its investigation to defend against Plaintiff's allegations, Defendant has waived any applicable privilege with respect to not only the investigative report, but any underlying documents. *See Angelone v. Xerox Corp.*, 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011) ("[W]hen a Title VII defendant affirmatively invokes a *Faragher-Ellerth* defense that is premised, in whole or in part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents . . . created as part of . . . the investigation."); *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 893-94 (M.D. Tenn. 2010) (employer's reliance on internal investigation of discrimination complaint waived work product protection for all documents underlying investigative report); *E.E.O.C. v. Outback Steakhouse of Florida, Inc.*, 251 F.R.D. 603, 611 (D.

Colo. 2008) ("Courts have interpreted an assertion of the *Faragher*/*Ellerth* affirmative defense as waiving the protection of the work product doctrine and attorney-client privilege in relation to investigations and remedial efforts in response to employee complaints of discrimination because doing so brings the employer's investigations into issue."); *Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) ("If Defendants assert as an affirmative defense the adequacy of their pre-litigation investigation into Walker's claims of discrimination, then they waive the attorney-client privilege and the work product doctrine with respect to documents reflecting that investigation.").

Plaintiff would be prejudiced by Defendant's invocation the *Faragher-Ellerth* defense "if she could not assess the full measure of [Defendant's] response in light of what it learned from its investigation." *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 245-46 (E.D.N.Y. 2001). Therefore, Defendant waived any privilege that may have applied to the emails described in entries 2 through 10 by placing its internal investigation at issue.

Finally, Defendant has completely withheld the 3 emails described in entries 11 through 13 of its privilege log as being "generated in response to EEOC charge filed by Plaintiff" and therefore protected by the work product doctrine. (R. Doc. 20-8 at 2). Despite Defendant's description of the email's content, none of the communications refer to or in any way indicate Plaintiff's EEOC charge or even her internal complaints of discrimination. (R. Doc. 38 at 15-18). Rather, each email is authored by an employee of either Defendant or Exxon Mobil and offers a recount of the employee's observations of Plaintiff's performance and abilities during her employment. (R. Doc. 38 at 15-18).

For example, the first email is written by Terrence Below, a USES employee listed by Defendant as a fact witness who "provided email communications regarding Ms. Williams' poor

work performance and inexperience" and may testify about "his efforts to train" Plaintiff, as well as her "poor work performance, inexperience, [and] inappropriate workplace demeanor." (Def.'s Resp. to Interrog. Nos. 1 and 11, R. Doc. 20-2 at 3, 9). In his email, Mr. Below recounts incidents of performance issues observed during Plaintiff's employment. (R. Doc. 38 at 15). The two other emails provide the same type of information. (R. Doc. 38 at 17-18).

The emails described in entries 11 through 13 do not constitute work product. None of them discuss any legal issue or offer any type of legal analysis or conclusions. No attorneys are involved in the communications. Again, neither Plaintiff's EEOC charge nor internal complaints of discrimination are mentioned. Put simply, the emails are purely factual in nature. And so, none of the emails are properly withheld as protected by the work product doctrine. For the reasons given above,

**IT IS ORDERED** that Plaintiff's Motion to Compel is **GRANTED in part** as to Request for Production No. 25. Defendant must provide Plaintiff with unredacted versions of the documents listed in entries 2 through 13 of its privilege log within **14 days** of this Order.

C. Other Complaints of Discrimination

Plaintiff is seeking information regarding other complaints of discrimination filed against Defendant, her former employer.

**Interrogatory No. 5:**
Identify all persons between June 2010 and the present who have made complaints of employment discrimination, harassment, or retaliation against Defendant for locations in Louisiana and locations for which HR employee Candace Fobb had responsibility; set forth the allegations of the complaint in detail; and describe in detail any action taken by the Defendant in response to the complaint. For each complaining employee, [provide] their job title, the date the complaint was made, and who received the complaint.

**Response to Interrogatory No. 5:**
Defendant objects to Interrogatory No. 5 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection

and excluding Plaintiff's complaint against Robert Sanders, there have been no complaints against Robert Sanders for sexual harassment since June of 2010.

**Request for Production No. 10:**
All documents constituting any complaints, concerns, or other comments expressed to Defendant concerning discrimination, harassment, and retaliation between June 2010 and the present for locations in Louisiana and locations for which HR employee Candace Fobb had responsibility; and all documents concerning responses thereto.

**Response to Request for Production No. 10:**
Defendant objects to Request for Production No. 10 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and excluding Plaintiff's complaint against Robert Sanders, there have been no other complaints concerning discrimination, harassment and retaliation against Robert Sanders.

(R. Doc. 20-2 at 7, 18).

In her Motion, Plaintiff first argues that Defendant's response is inadequately limited to complaints filed against Robert Sanders, and should include other complaints of discrimination filed at any of the company's Louisiana locations. (R. Doc. 20-1 at 3). The Court agrees that Plaintiff is entitled to more than simply those complaints filed against Robert Sanders; however, she is not entitled to any and all complaints of discrimination filed at the company's Louisiana locations.

Generally, "[o]ther complaints of discrimination against an employer have been found relevant . . . if limited to the (a) same form of alleged discrimination, (b) the same department or agency where plaintiff worked, and (c) a reasonable time before and after the discrimination occurred" — usually 3 to 5 years. *Willis v. U.S.*, 2012 WL 5472032, at *1 n.6 (M.D. La. Nov. 9, 2012); *Gillum v. ICF Emergency Management Services, L.L.C.*, 2009 WL 2136269, at *6 n.5 (M.D. La. July 16, 2009) (limiting discovery of other claims of discrimination to "the past five (5) years") (collecting cases); *Marchese v. Secretary, Dep't of the Interior*, 2004 WL 2297465, at *2-3 (E.D. La. Oct.12, 2004) (3 years). With these principles in mind, the Court finds Plaintiff is entitled to discover any complaints of sex-based discrimination, sex-based harassment and

retaliation made by other employees at Defendant's Geismar location or the Exxon Mobil Baton Rouge refinery over the past 5 years.

Finally, Plaintiff argues that the Defendant's responses are incomplete because they failed to even address the second part of her requests, which sought information and documents pertaining to complaints of discrimination made in "locations for which HR employee Candace Fobb had responsibility." (R. Doc. 20-1 at 3); (R. Doc. 20-2 at 7, 18).  According to Plaintiff, discovery should be expanded beyond her worksite to include any allegations of discrimination investigated by Ms. Fobb because she "not only investigated Plaintiff's internal complaints, but also 'prepared a separate independent assessment regarding [Plaintiff] that recommends termination.'" (R. Doc. 20-1 at 4) (quoting (E-mail from Candace Fobb to John Moore, R. Doc. 20-3 at 2)).

In its Opposition, Defendant argues that any complaints of discrimination investigated by Candace Fobb are irrelevant to the issue before the Court — whether Plaintiff was subject to sexually harassing conduct by her supervisor at the ExxonMobil site.  This is especially so, Defendant suggests, considering Ms. Fobb "works in the Human Resources Department at Defendant's corporate headquarters in Houston, Texas, and she has supervisory responsibility over hundreds of employees." (R. Doc. 26 at 5).  The Court is not persuaded by Defendant's argument.

First, Defendant ignores Plaintiff's other allegations of sex discrimination and retaliation, in suggesting the requested discovery is irrelevant to her claims of sexual harassment and is overly broad.  Most important, Defendant ignores the large role Ms. Fobb played in the investigation of Plaintiff's allegations of sex-based harassment and discrimination, and ultimately in Plaintiff's termination.  Ms. Fobb was assigned to investigate Plaintiff's allegations

of sex-based harassment and discrimination.  But at the end of her investigation, she not only produced a report of her findings, she also provided a "separate independent assessment regarding Ms. Shinaye Williams that recommend[ed] termination." (E-mail from Candace Fobb to John Moore, R. Doc. 20-3 at 2).  In its other discovery responses, Defendant confirmed that the Ms. Fobb's assessment of Plaintiff's performance was issued "independent[ly]" and that the "decision to terminate Plaintiff was made by Candice Fobb" and 3 others individuals. (Def.'s Resp. to Interrog. Nos. 1 and 10, R. Doc. 20-2 at 2, 9).

While the scope of discovery is generally limited to an employee's worksite or department, courts have equally recognized that discovery should include those "individuals alleged to have discriminated against the plaintiff," regardless of geographic location. *Smith v. DeTar Hosp. LLC*, 2011 WL 6217497, at *5 (S.D. Tex. Dec. 14, 2011).  Here, Plaintiff claims she was fired in retaliation for her internal complaints of sex-based harassment and discrimination.  Ms. Fobb investigated those internal complaints, then independently assessed Plaintiff's work performance, recommended her termination, and was ultimately one of the 4 people making the decision to fire Plaintiff.  Under these allegations, Ms. Fobb's involvement in the investigation of other employee's complaints of sex-based discrimination, sexual harassment or retaliation, regardless of geographic location, "may indeed be relevant to Plaintiff's claim that [Ms. Fobb] improperly influenced [her fellow] decision makers in this case in retaliation for Plaintiff making a discrimination complaint." *Soto v. Genetech, Inc.*, 2008 WL 4621832, at *6 (S.D. Fla. Oct. 17, 2008) (where plaintiff alleged that HR official investigating his discrimination complaint improperly influenced the decision to fire plaintiff in retaliation for making his complaint, plaintiff could discover how HR investigated and processed other employee's discrimination complaints, regardless of geographic location).

"A plaintiff who must shoulder the burden of proving that the reasons given for his discharge are pretextual should not normally be denied the information necessary to establish that claim." *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978). Therefore, Plaintiff should be allowed to conduct discovery of any relevant animus harbored by Ms. Fobb, but limited to the type of discrimination at issue here. *See Hill v. Motel 6*, 205 F.R.D. 490, 495 (S.D. Ohio 2001) (in individual disparate treatment claim, employee fired from area manager position could discover personnel files of area managers in other regions who were supervised by regional vice–president making decision to terminate plaintiff, for it would show whether the vice–president was enforcing a practice of age discrimination); *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 81 (D. Conn. 2009) (employee entitled to "information concerning other claims of age and disability discrimination" filed against the company in "regions under a particular supervisor"); *Rodger v. Electronic Data Systems, Corp.*, 155 F.R.D. 537, 540 (E.D.N.C. 1994) (where employee was fired pursuant to company-wide reduction-in-force (RIF), discovery of others fired pursuant to RIF was extended beyond employee's local division to entire state division; although local managers decided which employees would be fired, managers "collaborated with" president of state division in making those decisions). For the reasons given above, Plaintiff may discover Ms. Fobb's investigations of any complaints of sex-based harassment, sex-based discrimination and retaliation within the last 5 years. For the reasons given above,

**IT IS ORDERED** that Plaintiff's Motion is **GRANTED in part** as to Interrogatory No. 5 and Request for Production No. 10. Within **14 days** of this Order, Defendant must produce Ms. Fobb's investigations of any complaints of sex-based harassment, sex-based discrimination and retaliation within the last 5 years; and any complaints of sex-based discrimination, sex-based

harassment and retaliation made by other employees at Defendant's Geismar location or the Exxon Mobil Baton Rouge refinery over the past 5 years.

      **D.**      **Employee Handbooks**

Plaintiff argues that Defendant's employee handbooks dating back to 2011 are relevant and discoverable, as sought by Request for Production No. 23. (R. Doc. 20-1 at 11-12). According to Plaintiff, the handbooks in place before her employment began in 2014 are first relevant to her claim for "unpaid Paid Time Off." (R. Doc. 20-1 at 11). Defendant has claimed that Plaintiff is not entitled to payment as "hourly employees do not accrue vacation until . . . the first of the month following 90 days of employment." (R. Doc. 20-1 at 11). Plaintiff, however, claims this provision is not found in the employee handbook in place during her employment. Instead, that handbook states that employees "accrue twelve days of vacation per year and paid time off is accrued on a monthly basis." (R. Doc. 20-1 at 11). Therefore, Plaintiff suggests that any "previous or subsequent handbooks" are relevant to determine whether Defendant has any clearly established policy on the accrual of paid time off or has made any changes to its policy. (R. Doc. 20-1). Moreover, Plaintiff suggests that the employee handbooks would show the evolution of Defendant's EEO and other policies. This information, Plaintiff claims, is relevant to whether it took reasonable care to prevent discrimination. (R. Doc. 20-1 at 12). The Court disagrees.

The relevant policies are those in place during Plaintiff's time of employment. Plaintiff has not sufficiently demonstrated the relevance of any past policies found in Defendant's Employee Handbooks. *See Sims v. Mills*, 2009 WL 4496233, at *6 (N.D. Tex. Dec. 3, 2009) (employment policy not in place during plaintiff's employment was irrelevant). Therefore,

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** at to Request for Production No. 23.

### E.     Contract between Defendant and ExxonMobil

Request for Production No. 27 asks for a copy of the contract in place between Defendant and "the ExxonMobil facility to which Plaintiff was assigned to work," which Defendant has withheld as "irrelevant" and containing "information that is confidential and proprietary." (R. Doc. 20-1 at 12); (R. Doc. 20-2 at 22-23).  According to Plaintiff, Defendant has alleged her poor performance, inexperience and lack of skill were reasons for her termination. (Def.'s Resp. to Interrog. No. 10, R. Doc. 20-2 at 9).  Defendant additionally intends to call witnesses to testify about "ExxonMobil's expectations" of USES' employees and Plaintiff's "insufficient performance reviews for ExxonMobil." (Def.'s Resp. to Interrog. No. 1, R. Doc. 20-2 at 3-4). Defendant has likewise produced emails "regarding ExxonMobil's expectations and training . . . ." and intends to call Exxon employees to testify as fact witnesses. (Def.'s Resp. to Interrog. Nos. 1, 11 and Req. for Produc. No. 1, R. Doc. 20-2 at 5, 9, 13).  Therefore, Plaintiff claims that the contract with ExxonMobil is relevant because it is likely to contain information of Exxon's "expected performance standards, ability to dictate what employees are assigned to its locations, and ability to remove any of Defendant's employees from its location." (R. Doc. 20-1 at 13).

Given Defendant's reasons for terminating Plaintiff and Defendant's expected evidence, including the testimony of its witnesses, the Court agrees that the contract is discoverable to the extent it contains information regarding Exxon's expectations of Defendant's employees and Exxon's rights concerning or authority over Defendant's personnel.  For example, information about whether Exxon had the right to request that any of Defendant's employees be removed from its facility, or to make any request or raise concerns as to any individual's performance,

Case 3:15-cv-00168-RLB   Document 54   02/16/16   Page 18 of 19

would be relevant to pretext. Indeed, other courts have found contracts between ExxonMobil and a plaintiff's statutory employer relevant in employment discrimination cases. *See Boutin v. Exxon Mobil Corp.*, 730 F. Supp. 2d 660, 663-64 (S.D. Tex. 2010) (discussing the terms of the contract between Exxon and plaintiff's employer, which explain that "Jacobs is an independent contractor controlling and supervising its personnel" and "ExxonMobil has the right to request that any Jacobs employee be removed" and "required its contractors to implement" certain policies). Therefore,

**IT IS ORDERED** that Plaintiff's Motion to Compel is **GRANTED** as to Request for Production No. 27 and Defendant must provide responsive documents within **14 days** of this Order.

Although Defendant claims the contract contains confidential and proprietary business information, Defendant has not offered to redact this information prior to production, provided any privilege log or otherwise moved to expand the current Protective Order's definition of "confidential information" to include the contract and prohibit its dissemination outside of this litigation.[3] Nonetheless, to the extent the contract contains proprietary or confidential business information that is clearly not relevant to this litigation — e.g., pricing information, trade secrets, etc. — **IT IS ORDERED** that Defendant may redact this information prior to production and/or file a motion, joint or otherwise, to amend the current **Protective Order** (R. Doc. 15) to cover any responsive contracts within **7 days** of this Order.

F. **Reasonably Expenses and Attorney's Fees**

Finally, Plaintiff seeks an award of attorney's fees associated with her Motion to Compel. Rule 37(a)(5) allows for an award of expenses and attorney's fees to be paid to the moving party

---

[3] The current Protective Order (R. Doc. 15) defines "confidential information" as "The personnel files or excerpts thereof of past or present employees of United States Environmental Services, L.L.C." (R. Doc. 15-1 at 1).

when a motion to compel is granted. However, when the motion is granted in part and denied in part, as is the case here, the court may "apportion the reasonable expenses" between the parties. Because the Motion was only partially granted and Defendant's objections were not unfounded, the Court will order both parties to pay their own costs associated with Plaintiff's Motion to Compel. Therefore, Plaintiff's Motion to Compel is **DENIED** to the extent it seeks an award of attorney's fees and reasonable expenses under Rule 37(a).

## IV.   CONCLUSION

For the reasons given above, Plaintiff's Motion to Compel is **GRANTED in part** and **DENIED in part**. Each party shall bear its own costs.

Signed in Baton Rouge, Louisiana, on February 16, 2016.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**