UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHINAYE WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-168-RLB** |
| **UNITED STATES ENVIRONMENTAL SERVICES, LLC, USES, INC. AND UNITED STATES MARITIME SERVICES, INC.** | |

## ORDER

Before the Court is Defendant's Motion to Compel (Motion) responses to Interrogatory Nos. 7, 9 and 10, as well as Request for Production Nos. 10, 11, 12 and 14, filed on November 9, 2015. (R. Doc. 21). Plaintiff filed a Memorandum in Opposition (Opposition) on November 30, 2015. (R. Doc. 27). On December 2, 2015, Defendant filed a Reply Memorandum in support of its Motion. (R. Doc. 32). For the reasons discussed below, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

I.  BACKGROUND

In this action, Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, by subjecting her to: discriminatory compensation; sexually harassing conduct by her supervisor; and retaliation by firing her shortly after reporting her supervisor's conduct.[1] (R. Doc. 18 at 1). According to the Complaint, Plaintiff started working

---

[1] Plaintiff claims the same conduct also violated the Louisiana Employment Discrimination Law. Plaintiff also sues Defendants under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201; the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001; and the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Pub. L. No. 99-272, § 9503, 100 Stat. 82 (1986).

for Defendants on June 27, 2014 as a health and safety supervisor. (R. Doc. 18 at 3). In July of 2014, Defendants "secured a contract to work at the ExxonMobil Baton Rouge refinery" (ExxonMobil) and assigned Plaintiff to work at the site. (R. Doc. 5 at 2). "Throughout her employment," Plaintiff alleges, she "was subject to unwanted touchings [sic], inappropriate comments, and sexual advances from her supervisor, Mr. Robert 'Boogie' Sanders." (R. Doc. 18 at 3). Plaintiff then "reported Mr. Sanders' conduct to Defendants' Human Resources Department." (R. Doc. 18 at 3). Shortly after reporting the conduct, Plaintiff claims that "Defendants abruptly terminated [her] employment." (R. Doc. 18 at 3). On March 20, 2015, Plaintiff filed the instant lawsuit.

During discovery on June 18, 2015, Defendant served Interrogatories and Requests for Production of Documents on Plaintiff. (R. Doc. 21-1 at 2). Plaintiff originally responded to the discovery on August 11, 2015. (R. Doc. 21-3). After Defendant complained about the sufficiency of the responses, Plaintiff submitted her First Supplement Responses on August 15, 2015 (R. Doc. 21-5) and her Second Supplemental Responses on September 28, 2015 (R. Doc. 21-7). Nonetheless, Defendant filed the instant Motion to Compel on November 9, 2015, claiming Plaintiff's responses to Interrogatory Nos. 7, 9 and 10, and Request for Production Nos. 10, 11, 12 and 14 "are still insufficient and non-responsive." (R. Doc. 21-1 at 2).

## II. APPLICABLE LAW

Rule 26(b)(1) of the Federal Rules of Civil Procedure[2] allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

---

[2] Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015 to clarify the scope of discovery. The 2015 amendments "restor[e] the proportionality calculation to Rule 26(b)(1)," but do not "change the existing responsibilities of the court and the parties to consider proportionality." Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015). The amendments likewise do not "place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015). "The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending." *American Federation of Musicians of the U.S. and Canada v. Skodam*

proportional to the needs of the case." Whether discovery is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information may fall within this scope of discovery even if it is not admissible in evidence. Fed. R. Civ. P. 26(b)(1).

## III. DISCUSSION

In its Motion, Defendant claims that Plaintiff has "failed to provide adequate responses to Interrogatory Nos. 7, 9, and 10," which "seek discoverable information relating to Plaintiff's employment history and earnings, her treating physicians, and any treatment sought for mental anguish or stress." (R. Doc. 21-1 at 4). Defendant additionally argues that Plaintiff did not adequately respond to Request for Production Nos. 10, 11, 12 and 14, seeking "documents and authorizations relating to Plaintiff's employment history, her earnings, her tax returns, and her medical records." (R. Doc. 21-1 at 4). In response, Plaintiff claims that Defendant seeks "highly personal categories of information that have no bearing on the claims and defenses at issue in this case." (R. Doc. 27 at 1).

### A. Income Tax Returns and W-2s

Defendant's Request for Production Nos. 11 and 14 seek information regarding Plaintiff's income from any and all sources, including wages. (R. Doc. 21-3 at 12-13).

**Request for Production No. 11:**
Please fully execute the Internal Revenue Service Authorization forms, which forms are attached.

---

*Films, LLC*, -- F. Supp. 3d --, 2015 WL 7771078, at *5 (N.D. Tex. Dec. 3, 2015) (applying the amended version of Rule 26(b)(1) to a motion to compel filed before December 1, 2015). Given the restorative nature of the 2015 amendments, the Court finds that applying the amendments to the instant Motion to Compel is both just and practicable.

**Request for Production No. 14:**
Federal and State income tax returns for the preceding four (4) years to the present, including W-2 forms, filed by you, and any records of wages earned during those years.

**Response to Request for Production Nos. 11 and 14:**
Plaintiff objects to this Request because tax returns are subject to a qualified privilege and Defendant cannot establish a compelling need for Plaintiff's tax returns. Plaintiff has provided, or will provide, the details of her earnings history to demonstrate her mitigation efforts.

(R. Doc. 21-3 at 12-13); (R. Doc. 41).

Tax returns are highly sensitive documents and the court will only compel their production where the requesting party "demonstrates both: (1) that the tax information is 'relevant' to the subject matter of the action; and (2) that there is a 'compelling need' for the information because the information contained in the tax returns is not 'otherwise readily obtainable' through alternative forms of discovery, such as depositions or sworn interrogatory answers." *Bulter v. Exxon Mobile Ref. & Supply Co.*, 2008 WL 4059867, at *2 (M.D. La. Aug. 28, 2008) (citing *National Gas Pipeline Co. of America*, 2 F.3d 1397, 1411 (5th Cir. 1993)).

Because Plaintiff is seeking compensatory damages for lost and unpaid wages, her tax returns are relevant to the litigation. *Butler*, 2008 WL 4059867, at *2 (Numerous courts have recognized "that tax return information is relevant where a plaintiff has placed the subject of his income/earning capacity at issue in litigation."). For the same reason, any other documents evidencing Plaintiff's earnings, which are not subject to the same qualified privilege, are likewise relevant and must be produced. However, as the Court later explains with respect to Request for Production No. 12, Plaintiff's earnings prior to her employment with Defendant are not relevant to this cause of action. Therefore, the temporal scope of the financial information relevant to Plaintiff's case is limited to the time period during and after her employment with

Defendant.  Because Plaintiff was hired by Defendant in June of 2014, only Plaintiff's earnings (and other financial information) between 2014 and the present are relevant and discoverable.

Second, Defendant has shown a compelling need for Plaintiff's tax returns — not because, as Defendant first argues, Plaintiff has not produced them herself, but because she "has not produced any other documents relating to the wages she has earned." (R. Doc. 21-1 at 12). While the Court recognizes that this information may also be obtained in response to interrogatories[3] or deposition questions, that fact does not negate Defendant's showing.  Plaintiff was asked during discovery to produce "any records" evidencing her income.  Defendant claims and Plaintiff does not dispute that she has not produced any responsive documents.  Plaintiff has likewise not claimed that these documents do not exist.  For that reason, Defendant has shown a compelling need for Plaintiff's tax returns.  Therefore,

**IT IS ORDERED** that Defendant's Motion to Compel is **GRANTED in part** as to **Request for Production Nos. 11 and 14**.  The Court **temporally limits** Request for Production Nos. 11 and 14 to the period between **2014** and the **present**.

In accordance with the temporal limitations set by the Court, Plaintiff must **respond** to **Request for Production Nos. 11 and 14** with **14** days of this Order.

To the extent Plaintiff has not yet filed her 2015 tax returns, Plaintiff must still authorize the release of those tax returns in response to Request for Production No. 11, and she must **supplement** her response to Request for Production No. 14 "in a timely manner" once that

---

[3] In response to Interrogatory No. 7, Plaintiff indicated that she currently earns $24.00 per hour.  While this information is partially responsive to Request for Production No. 14, Plaintiff did not indicate the amount of hours worked during any given week, leaving Defendant unable to discern the actual amount of wages earned in her current position.  Moreover, Plaintiff does not indicate whether she has any other sources of income.  Therefore, Plaintiff's Answer to Interrogatory No. 7 does not negate Defendant's compelling need for the documents sought in Request for Production No. 14.

information becomes available. *See* Fed. R. Civ. P. 26(e)(1) (outlining each party's ongoing duty to supplement discovery responses and initial disclosures).

B.     **Employment History and Records**

Defendant's Interrogatory No. 7 and Request for Production No. 12 seek information relating to Plaintiff's employment history:

**Interrogatory No. 7:**
Please identify with specificity your job history since leaving high school until present, including dates of employment, name of employer(s), position(s) held, salary or wage paid, reason for leaving, if any. If you have not worked since leaving USES, please identify all efforts you have made to secure employment, including companies to whom you sent resumes, interviews obtained and the like.

**Response to Interrogatory No. 7:**
Plaintiff objects to this Interrogatory because it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, Plaintiff's work history since leaving high school has no bearing on the claims and defenses in the instant case. Without waiving these objections, Plaintiff worked as a foster parent from 2009 through 2013 and earned $2,900 per month. As to Plaintiff's efforts to secure work since her discharge from Defendant, please see documents Bates numbered S. Williams 115 through 118.

**Supplemental Response to Interrogatory No. 7:**
. . . Finally, Plaintiff began working for Acme Truck Lines on or around July 20, 2015 as a driver and earns $24.00/hour in that position.

(R. Doc. 21-3 at 5); (R. Doc. 21-7 at 4).

By only identifying her past wages and job title, and providing a copy of her resume, Defendant argues that Plaintiff has not adequately answered Interrogatory No. 7, to the extent it seeks information regarding her past employment. (R. Doc. 21-3); (R. Doc. 21-7); (R. Doc. 21-8).[4]   Defendant correctly points out that Plaintiff did not provide all of the information requested

---

[4] In response to Interrogatory No. 7, Plaintiff freely disclosed the amount of her monthly earnings during her previous employment.  But as the Court explains with respect to Request for Production Nos. 12 and 14, Plaintiff's wages earned before her employment with Defendant are not relevant to her claims before this Court and the Court has not compelled the production of any information referencing Plaintiff's wages prior to her employment with Defendant.  The fact that Plaintiff disclosed some of this information in response to an Interrogatory does not affect the Court's holding.

in Interrogatory No. 7.  Nonetheless, as the Court explains with respect to Request for Production No. 12, information regarding Plaintiff's past employers, positions, salaries and reasons for leaving is not relevant to any party's claim or defense before the Court. Fed. R. Civ. P. 26(b)(1).  This information is likewise not proportional to the needs of the case, which is, "by all appearances to the court, a fairly routine case alleging individual employment discrimination." *Perry v. Best Lock Corp.*, 1999 WL 33494858, at *2 (S.D. Ind. Jan. 21, 1999) ("If filing . . . a fairly routine case alleging individual employment discrimination opens up the prospect of discovery directed at all previous . . . employers, there is a serious risk that such discovery can become 'an instrument for delay or oppression.'").  Beyond that, the Court also finds Interrogatory No. 7 overly broad to the extent it seeks previous employment information dating back to Plaintiff's high school graduation.

Because the information sought in Interrogatory No. 7 regarding Plaintiff's past employment falls outside the scope of discovery, Plaintiff's current response is sufficient.

The remainder of Interrogatory No. 7 asks about Plaintiff's efforts to secure employment following her termination.  In response, Plaintiff provided a document that apparently lists all of the employers to which she has submitted applications. (R. Doc. 21-3 at 17-20).  Defendant claims that this document does not clearly list the applications submitted by Plaintiff, or otherwise explain her efforts to secure employment, following her termination.  While the document does indicate that it is a list of job applications, it is somewhat vague as to the dates on which those applications were submitted and whether the application process was complete.  Plaintiff likewise does not indicate whether she went on any interviews, received any calls from employers, or otherwise made contact with any employers while looking for work. (R. Doc. 21-7

at 4). Plaintiff must supplement her response to Interrogatory No. 7 to include this and any other relevant information regarding Plaintiff's post-termination job search. Therefore,

Defendant's Motion to Compel is **GRANTED in part** to the extent **Interrogatory No. 7** seeks information regarding Plaintiff's efforts to secure employment after her termination. Plaintiff must supplement her response to Interrogatory No. 7 within **14 days** of this Order.

**Request for Production No. 12:**
Please Execute the Authorization to Release Employment Information, which form is attached.

**Authorization to Release Employment Records**
[A]ny and all employment records pertaining to [Plaintiff], including, but not limited to the following:
1. All employment records and/or sub-contractor records of whatever kind or nature;
2. The entire personnel file and/or employment file;
3. All records pertaining to any physical examination performed at any time in connection with employment with company;
4. All documents reflecting the rate of pay for at all times during employment and the actual wages received during employment;
5. Documentation setting forth any days missed from work and the wages lost or sick leave lost or vacation leave lost as a result of missing that time;
6. All incident, accident or injury reports pertaining to any accidents, or any documentation of whatever kind or nature pertaining to any accidents on or off the job;
7. Employment application;
8. Documentation pertaining to hire date, termination date, the reason for termination and the dates and reasons for any lay off during employment; and
9. All documentation of whatever kind or nature.

**Response to Request for Production No. 12:**
Plaintiff objects to this Request because it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that Plaintiff's employment with other employers has no bearing on the claims or defenses in the instant case. Plaintiff has produced, or will produce, information for employers which pertain to her wages and benefits. Responding further, Plaintiff has not filed any claims or charges against any other employers.

(R. Doc. 21-3 at 5, 13); (R. Doc. 21-7 at 4); (R. Doc. 41 at 5).

At the outset, the Court finds Request for Production No. 12 overly broad to the extent it seeks information dating back to Plaintiff's graduation from high school. Like Interrogatory No.

7, to the extent any information about Plaintiff's past employment is deemed relevant and discoverable in response Request for Production No. 12, that information will be temporally limited to 5 years before Plaintiff's employment with Defendant.

In its Motion, Defendant argues that Plaintiff's employment records "are discoverable to obtain information of past complaints, grievances, lawsuits, or charges with current and former employers[;] information relating to her work performance[;] information relating to damages and mitigation[;] and information relating to emotional distress." (R. Doc. 32 at 1).

### i. Damages

According to Defendant, Plaintiff's payroll and other employment records from her current and previous employers is "critical for establishing damages and mitigation." (R. Doc. 21-1 at 9). Other than this declaration, Defendant does not explain how this information is "critical to establishing damages and mitigation." Based on the elements of both Plaintiff's claim for damages and Defendant's mitigation defense, the Court disagrees with Defendant's sweeping argument. Instead, the Court finds only portions of Plaintiff's employment record with her current employer are discoverable.

First, documents showing Plaintiff's earnings while working for any previous employers are not relevant to her claims for lost wages and compensatory damages. An award of back pay under Title VII is meant to "restor[e]" the injured worker "to the economic position in which they would have been but for the discrimination." *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 252 (5th Cir. 1974); *Jackson v. Host Intern., Inc.*, 426 F. App'x 215, 222 (5th Cir. 2011) ("Back pay commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred."). The focus is necessarily on the employee's compensation during his or her

employment with the defendant employer. Compensation and other employment records relating to a previous employer[5] would therefore be irrelevant to determine the amount of "back pay otherwise allowable."[6] 42 U.S.C. § 2000e-5(g)(1); *see also Maxwell v. Health Center of Lake City, Inc.*, 2006 WL 1627020, at *3 (M.D. Fla. June 6, 2006) (While a former employee's salary after employment "is relevant to the issue of mitigation of damages, Defendant has failed to show why her previous earnings have any relevance to damages."); *see also Graham v. Casey's General Stores*, 206 F.R.D. 251, 255 (S.D. Ind. 2002) (defendant failed to show why "salary information from a previous employer is in any way relevant to damages" in an employment discrimination case).

Back pay may be reduced, however, by "[i]nterim earnings or amounts earnable with reasonable diligence by" the employee. 42 U.S.C. § 2000e-5(g)(1). First, Plaintiff's rate of pay at her current job is obviously relevant and discoverable evidence of "interim earnings," which may warrant a reduction of back pay. Second, an employer may defend against and reduce an award of back pay by showing the employee failed to mitigate his or her damages. The burden is on the employer to prove the (1) availability of substantially equivalent work; and (2) former employee's failure to exercise reasonable diligence to obtain it. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003).

---

[5] Moreover, Plaintiff has already provided this information in response to Interrogatory No. 7. (Pl.'s Supp. Resp. to Interrog. No. 7, R. Doc. 21-7 at 4) ("Plaintiff worked as a foster parent from 2009 through 2013 and earned $2,900 per month."). In its correspondence with Plaintiff's counsel, Defendant indicated that it was "willing to accept Plaintiff's job history and wages from 2005 to the present." (R. Doc. 21-6 at 3).

[6] The same is true of Plaintiff's cause of action for unpaid wages under the FLSA. *See* 29 U.S.C. § 216(b) (An employer who violates the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.").

"Substantially equivalent employment . . . affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the [former employee] has been discriminatorily terminated." *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990). "The point of comparison must be the employment position with respect to which discrimination occurred." *Buckingham v. Booz Allen Hamiltom, Inc.*, 64 F. Supp. 3d 981, 985 (S.D. Tex. 2014).

With these principles in mind, whether Plaintiff's current position is substantially equivalent to her job with Defendant is relevant to mitigation and obviously discoverable. Plaintiff's past employment, however, is not relevant nor is it proportional to the needs of this case. *See Boehms v. Crowell*, 139 F.3d 452, 460 (5th Cir. 1998) ("[O]ur focus in a mitigation analysis—and the base from which all comparisons about whether 'reasonable efforts' to obtain comparable work are made—must be the employment position with respect to which discrimination occurred."). Therefore, to the extent Defendant seeks evidence of Plaintiff's current "promotional opportunities, compensation, job responsibilities, working conditions, and status," the Court will permit discovery of that information as discussed below.

### ii. Performance

Next, Defendant contends that Plaintiff's employment records "may provide information about Plaintiff's work performance and whether Plaintiff was qualified for her position" with Defendant. (R. Doc. 21-1 at 9). For that reason, Defendant contends the records are relevant to Defendant's legitimate non-discriminatory reason for terminating Plaintiff's employment — "that Plaintiff was not qualified for her position and performed poorly." (R. Doc. 21-1 at 9). This argument, however, is not persuasive.

In a disparate treatment claim, "the ultimate issue is the employer's reasoning at the moment the questioned employment decision is made." *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) ("a justification that could not have motivated the employer's decision is not evidence that tends to illuminate the ultimate issue and is therefore simply irrelevant"); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) (courts should conduct a snapshot inquiry into the employer's motive at the exact instant the decision was made). Therefore, the "evidence relevant to determining whether" an employer terminated an employee for legitimate non-discriminatory reasons "is evidence that goes to what [the employer] knew at the time [it] . . . recommended [the employee's] termination." *Perez v. Tx. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004).

According to Defendant, Plaintiff was terminated for poor performance. However, Defendant now seeks additional records to seemingly justify the reasons given for its previous employment action. This position is misguided. To establish its given reason for terminating Plaintiff, Defendant must present evidence of the actual sub-standard performance observed by Defendant, not some other employer. Any new records from other employers could not have motivated Defendant's decision at the time it was made and are therefore irrelevant. *EEOC v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 3 (D. Mass. 2014) (employment records from other employers were not relevant to show charging party's "'performance at other employers was deficient,'" as "the factual issue at trial will be what Texas Roadhouse knew . . . at the time of the alleged discrimination").

In support of its argument, Defendant relies on cases in which district courts outside of the Fifth Circuit have reached the opposite conclusion. While the Court recognizes that opposite conclusions have been reached by these courts, the cases cited by Defendant are not persuasive.

First, many are inapposite as the records were only relevant because of some particular allegation raised by the plaintiff, *Lutzeier v. Citigroup Inc.*, 2015 WL 1853820, at *3 (E.D. Mo. April 22, 2015) (relevant where plaintiff "alleged he would have had a 400% increase in compensation had he stayed at [defendant's company] and alleged reputational damages"), *Levitin v. Nationwide Mutual Ins. Co.*, 2012 WL 6552814, at *3 (S.D. Ohio Dec. 14, 2012) (related to specific allegations made by plaintiff), *Harroald v. Triumph Structure-Wichita, Inc.*, 2011 WL 2118648, at *3 (D. Kan. May 27, 2011) (relevant because of the nature of the particular claims and the types of damages requested), *Kampfe v. Petsmart, Inc.*, 304 F.R.D. 554, 558 (N.D. Iowa 2015) (related to specific issues before the court); or because the defendant claimed that the plaintiff was otherwise dishonest about his or her past employment during the application process, *Harroald*, 2011 WL 2118648, at *3 (defendant claimed to have "information demonstrating that Plaintiff was untruthful on her employment application"); *Lutzeier*, 2015 WL 1853820, at *2 (same).

None of these circumstances are present here, as Defendant summarily claims the evidence might potentially be relevant to Plaintiff's performance. For example, Defendant has not claimed that Plaintiff lied on her job application or was otherwise untruthful about her qualifications. Simply put, Defendant has not given any reason to doubt the credibility of any information provided by Plaintiff during either the hiring process or her employment.[7]

Moreover, other courts considering the issue, including district courts in the Fifth Circuit, have reached the same conclusion as this Court. *See Sanders v. Dalcraft, LLC*, 2009 WL 1392602, at *2 (N.D. Tex. May 18, 2009) (rejecting argument that employment records from former employers were relevant and discoverable because they "may show performance

---

[7] The remaining cases cited by Defendant are not persuasive because the courts simply allowed discovery without any real analysis or explanation.

deficiencies similar to those relied upon by [the defendant] to justify the termination"); *Allen v. CVS Pharmacy, Inc.*, 2013 WL 3873239, at *12 (S.D. Tex. July 25, 2013) (recognizing that "the Supreme Court has cautioned that employers should not, as a routine matter, undertake extensive discovery into an employee's background or performance to resist claims of discrimination") (citing *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 363 (1995)); *Liles v. Stuart Weitzman, LLC*, 2010 WL 1839229, at *3 (S.D. Fla. May 6, 2010) (rejecting argument that "a plaintiff's employment records from his former employer are relevant . . . to demonstrating poor performance while employed by the defendant"); *Maxwell*, 2006 WL 1627020, at *4 ("[T]his Court finds that documents showing Plaintiff's prior work history . . . have no relevance on her performance . . . during the time she was employed by Defendant. Moreover, Defendant fails to offer, and the Court cannot conjure, any additional likely explanations as to why such evidence could be relevant."); *EEOC v. Southern Haulers, LLC*, 2012 WL 1768064 at *3 (S.D. Ala. May 17, 2012) (quashing subpoenas to charging party's former employers where the "mere possibility that [defendant] might discovery [sic] some evidence that relates to [charging party's] job qualifications . . . is insufficient grounds to permit the broad discovery of all personnel records from every pre-incident employer"); *EEOC v. Renaissance III Organization*, 2006 WL 832504, at *1 (N.D. Tex. March 30, 2006) (quashing subpoenas requesting "the wholesale production of confidential employment records" from charging parties' former employers and noting the "privacy interests far outweigh any likely benefit").  Therefore, to the extent Defendant seeks evidence of Plaintiff's work performance or qualifications from prior employers, the Court finds this information irrelevant and beyond the scope of permissible discovery.

### iii.   Credibility

Defendant next argues that information in Plaintiff's employment records about "past complaints, grievances, lawsuits, or charges with current and former employers" are discoverable "given that this information bears on credibility." (R. Doc. 21-1 at 4). In support of this argument, Defendant cites several cases finding evidence of past discrimination claims relevant to credibility. (R. Doc. 21-1 at 4-5). In her opposition, Plaintiff does not address Defendant's argument that her past employment records may contain relevant evidence of credibility. However, in her Response to Request for Production No. 12, Plaintiff affirmatively states that she "has not filed any claims or charges against any other employers." (R. Doc. 21-3 at 13).

Other courts have found that evidence showing a plaintiff has made similar complaints of discrimination against other employers "could be relevant" and "possibly admissible" at trial to show his or her "motive, state of mind, credibility, modus operandi, and to cast doubt on plaintiff's claim for emotional damages." *See Maxwell v. Health Center of Lake City, Inc.*, 2006 WL 1627020, at *4 (M.D. Fla. June 6, 2006); *see also Graham*, 206 F.R.D. at 256 (same). And so, the Court finds that any past complaints of sexual harassment, sex discrimination and retaliation made by Plaintiff between 2011 and the present are discoverable. Therefore, to the extent Defendant seeks evidence of any past work-related complaints of sexual harassment, sex discrimination or retaliation filed by Plaintiff between 2011 and the present, the Court will permit discovery of this information, as discussed below.

### iv.   Medical Records from Employers

Finally, Defendant claims that Plaintiff's medical records sought through its authorization for employment files are relevant to Plaintiff's claim for emotional distress damages. However, with respect to medical records, the authorization specifically limits itself to "All records

pertaining to any *physical* examination performed at any time in connection with employment with company." (R. Doc. 41 at 5) (emphasis added).  The Court finds Plaintiff's physical examinations, if any, occurring in connection with her employment by other companies is not relevant to her claim for emotional distress in connection with this case.  Finally, to the extent any mental health records may be responsive to Request for Production No. 12, the discoverability of that information will be addressed along with Request for Production No. 10, which seeks any and all of Plaintiff's medical records between January 1, 2005 and the end of litigation.  Therefore, to the extent Defendant seeks medical records directly from Plaintiff's other employers under the proposed release, the Court will not permit such discovery.

For the reasons given above, **IT IS ORDERED** that Defendant's Motion to Compel is **GRANTED in part** and **DENIED in part** as it pertains to **Request for Production No. 12** and its accompanying **Authorization to Release Employment Records** (R. Doc. 41 at 5) must be **revised** to **comply** with the **restrictions** immediately outlined by the Court.  Defendant's Request for Production No. 12 is **limited** to the following information:

(a)  Plaintiff's **current** promotional opportunities, compensation, job responsibilities, working conditions, and status.

(b)  Any complaints of sexual harassment, sex-based discrimination or retaliation made by Plaintiff against any employer between **2011 and the present**.

Plaintiff is **ORDERED** to respond to Request for Production No. 12 within **14 days** of **receiving** Defendant's **revised** Authorization to Release Employment Records.

C.  **Medical Records**

Defendant seeks information regarding Plaintiff's medical treatment over the past 11-plus years.

**Interrogatory No. 9:**
If you are requesting damages for mental anguish, humiliation, emotional stress or distress, pain and suffering, or the like, please state whether you have seen any doctors, psychologists, social workers, or other health care professionals with regard to such mental anguish, stress and the like, and if so, identify them by name and address.

**Response to Interrogatory No. 9:**
Plaintiff objects to this Interrogatory because it requests information protected by the physician-patient privilege. Plaintiff further objects to this Interrogatory because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence in that Plaintiff is seeking only general emotional distress damages. Responding further, Plaintiff did not seek medical treatment *per se*, but consulted with the leaders of her church regarding her emotional distress.

**Interrogatory No. 10:**
Please provide the name, address and telephone number of any physician, doctor or health care provider who has treated you in the last ten years and state the condition for which you were treated and the date on which you received treatment.

**Request for Production No. 10:**
Please execute the Authorization for Release of Medical Records, which form is attached.

**Authorization for Release of Protected Health Information**
. . . I authorize Entity to disclose the following health information to the above specific party:

My medical records for the specific treatment dates from 1/1/05 to <u>END OF LITIGATION</u>.

The following specific portions of my medical records and health information: A **Certified Copy** of the <u>entire</u> records, including but not limited to:

> Office notes, correspondence, existing narrative reports, x-ray films and reports, CT Scan films and reports, diagnostic films and reports, pulmonary function tests and any tracings from these tests, pathology and pathology reports, etc., hospital records, charts, labs results, HIV test results patient intake forms, initial reports, billing records, appointment records, progress notes, handwritten notes, records of prescriptions, patient orders, insurance claim forms, or any and ALL records compiled by you or in your possession pertinent to the treatment of **SHINAYE WILLIAMS (DOB:_____); SSN:_____)** from 1/1/05 through the present.

**Response to Interrogatory No. 10 and Request for Production No. 10:**
Plaintiff objects to this Interrogatory because it requests information protected by the physician-patient privilege. Plaintiff further objects to this Interrogatory because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence in that Plaintiff is seeking only general emotional distress damages and therefore her medical records are not discoverable in this litigation.

(R. Doc. 21-3 at 6, 7, 12).

To begin, the Supreme Court has not recognized, at federal common law, the general physician-patient privilege asserted by Plaintiff. *Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977) ("[P]hysician-patient evidentiary privilege is unknown to the common law."). Therefore, Plaintiff's general objections based on the "physician-patient privilege" are unfounded. Federal common law does, however, recognize a psychotherapist-patient privilege protecting the communications between a patient and a licensed psychotherapist made during the course of treatment. *Jaffe v. Redmond*, 518 U.S. 1, 15 (1996). "The names of mental health providers . . . and the dates of treatment, are not privileged." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 471 (N.D. Tex. 2005). As such, the information responsive to Interrogatory Nos. 9 and 10, which is limited to the fact that treatment occurred, is not privileged as Plaintiff claims. Only those documents responsive to Request for Production No. 10, which seeks Plaintiff's medical records for any type of physical or mental treatment over the past 11-plus years, could potentially be covered by the psychiatric-patient privilege.

"When a plaintiff is seeking emotional distress damages, medical records related to the claim are relevant . . . ." *Bacharach v. Sun Trust Mortgage, Inc.*, 2015 WL 1843007, at *7 (E.D. La. April 22, 2015). This remains true even where, as here, a plaintiff is only seeking 'garden variety' emotional distress damages. Therefore, Plaintiff's mental health records are relevant to this litigation. Moreover, Plaintiff has placed her mental health at issue by seeking damages for emotional distress. As such, the psychotherapist-patient privilege has been waived as to any mental health treatment received that could inform the find of fact as to the source or extent of any emotional distress. However, Defendant's request for records dating back more than 11

years is overly broad.  The Court will therefore temporally limit the request to mental health records between 2011 and the present.  Therefore,

      **IT IS ORDERED** that Defendant's Motion is **GRANTED** as to **Interrogatory No. 9**, and Plaintiff must **respond** within **14 days** of this Order.

      Defendant's Motion is **GRANTED in part** as to **Request for Production No. 10**, and its accompanying **Authorization for Release of Protected Health Information** must be **revised** to **comply** with the **restrictions** immediately outlined by the Court.  Defendant's Request for Production No. 10 is **limited** to medical records:

    (a)    Indicating mental health treatment;

    (b)    Occurring between 2011 and the present.

Plaintiff must **respond** to Request for Production No. 10 within **14 days** of **receiving** Defendant's **revised** Authorization for Release of Protected Health Information.

      While mental health treatment related to Plaintiff's emotional distress may be relevant, Plaintiff's remaining medical treatment is not.  Defendant likewise does not argue that any records other than those relating to Plaintiff's mental health treatment for her emotional distress is relevant to her claim. *See Merrill*, 227 F.R.D. at 473 (recognizing that "all medical records, and especially those pertaining to treatment for purely physical conditions, will not necessarily be relevant" to emotion distress damages). Therefore,

      **IT IS ORDERED** that Defendant's Motion to Compel is otherwise **DENIED** as to **Interrogatory No. 10** and to the **extent Request for Production No. 10** seeks any records other than those related to Plaintiff's mental health treatment for her claimed emotional distress damages.

**D.     Attorney's Fees**

Finally, Defendant seeks an award of attorney's fees associated with their Motion to Compel.  Rule 37(a)(5) allows for an award of expenses and attorney's fees to be paid to the moving party when a motion to compel is granted.  However, when the motion is granted in part and denied in part, as is the case here, the court may "apportion the reasonable expenses" between the parties.  Because the Motion was only partially granted and Plaintiff's objects were not unfounded, the Court will order both parties to pay their own costs associated with Defendant's Motion to Compel.  Therefore, Defendant's Motion to Compel is **DENIED** to the extent it seeks an award of attorney's fees and reasonable expenses under Rule 37(a).

**IV.    CONCLUSION**

For the reasons given above, Defendant's Motion to Compel (R. Doc. 21) is **GRANTED in part** and **DENIED in part**.  Each party shall bear its own costs.

Signed in Baton Rouge, Louisiana, on February 18, 2016.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**